Please support. I'm Lindsay Powell for the government. With the court's permission, I'd like to reserve three minutes for rebuttal. This is a case under the Freedom of Information Act in which the plaintiff seeks records in the possession of ATF. Congress has expressly prohibited disclosure of the records at issue by precluding the expenditure of federal funds in furtherance of their disclosure and by immunizing these records from legal process. This broad prohibition applies to all records that are required to be kept pursuant to 18 U.S. Code section 923G1, and there is no dispute that the records at issue fall within that category. In granting summary judgment for the plaintiff, the district court did not hold otherwise. Instead, it relied on a separate provision unrelated to the appropriations riders that established the prohibition, 18 U.S. Code section 923G1d. For several reasons, that provision has no application in this case. As an initial matter, the factual predicates of that provision are not satisfied. By its terms, it applies when the Attorney General seizes records, and in that circumstance provides that copies shall be provided to the licensee within a reasonable time. Here, there was no seizure. The records were voluntarily transferred to ATF. There was no contrary finding by the district court, and plaintiff has not made an issue of the seizure point on appeal. That should suffice to resolve the case. Now, had the wife, the dealer, requested these records, could she have gotten them returned to her? Your Honor, if the records had been seized from the attorney general's office, there is no entitlement to copies under 923G1d. It's an express predicate of the requirement to provide copies. It's a very narrow provision intended to ensure the continuity of a licensee's record-keeping requirement. By law, a licensee must maintain certain records, but for this provision, if the government seized records, it could cause a disruption to that record-keeping function. And so the provision applies only in these very narrow circumstances where the records are taken by the government in order to ensure continuity. Ginsburg. If her contention were that she had inquiries which, under law, she was required to respond to and she needs the records, would that make a difference? Your Honor, as an initial matter, a licensee with ongoing operations is required to keep her own records on the premises, so there shouldn't be a situation where a licensee doesn't have access to her own records for those purposes. And that is one of the distinctions in this case, is that the plaintiff is a person who had ceased being a licensee, had transferred his business to another individual, and with it certain record-keeping obligations. When the plaintiff himself went out of business, there are one of two things can happen with the out-of-business records. They can either at that point in time be transferred to ATF, or they can go to the successor in interest of the business. And here, in effect, both things happen. They briefly went to the successor in interest, and then she decided that she didn't want to keep those old records from the other business and transferred them to ATF. So it's a fairly unique set of circumstances, likely why it hasn't come up before. But to go back to Your Honor's question, there shouldn't be a situation where a licensee with ongoing operations cannot access her own records. Well, I can think of a situation, and that is if all the records had not been transferred, so therefore she doesn't have these records and needs them for whatever purpose we might consider. So under those circumstances, would she have a right to have those records, or do you think the exemption still applies? I think the exemption still applies, and I'm not sure I fully understood, Your Honor. My question was, I think your premise was the records should have been transferred to her by the husband. And my question is, suppose not all the records were transferred to her, and she now needs them, and she's making the request that the records be disclosed. Under those circumstances, would there still not be a requirement? So I think I may have been unclear in discussing the different paths that the records might follow when a licensee goes out of business. So it would have been entirely reasonable for Mr. Caruso, when he went out of business, to simply transfer his records to ATF. And in that circumstance, there should be no reason why his successor in interest would need access to those records for different purposes. But even if we could imagine a situation in which she did, the answer to Your Honor's question is no. There's no entitlement under 923g1d. The copy requirement there is premised on a seizure of the records. Although I think that's enough to resolve the case here, since there's no dispute about the fact that no seizure took place, there are additional reasons why 923g1d should not apply. Mr. Caruso was not a licensee at the time of the transfer. And particularly, if you look at the context of 923g1d and that requirement, it's clear that this is a provision dealing with the operations of people who are presently licensees, and it's designed to protect their interests and establish the government's and the licensee's rights vis-a-vis these records. So it doesn't have any application to people who are no longer licensees, and it doesn't matter whether Mr. Caruso was once a licensee, even if he was a licensee at the time the records were created. I think at bottom, plaintiff's argument distills to a claim that just because the records were once his, that as a policy matter, it wouldn't be appropriate to withhold the records in this case. And I would just note that that's quite clear that that's not how FOIA operates. In almost all circumstances, it is indifferent to the identity of the requester. In Julian, the Supreme Court recognized a very narrow exception that has not been repeated in future cases. It turned on the operation of the privilege that underlie the invocation of Exemption V there, and there's simply no analogy between that case and this one. If the Court has no further questions, I'll reserve the remainder of my time for rebuttal. All right. Thank you. Thank you, Your Honors. May it please the Court. I can't see a picture of myself, so please let me know if there's some problem with seeing me and hearing me. As we explained in the response brief, the government did not mention any exemptions at all until summary judgment, which was nearly a year and a half after the FOIA request was made. And in fact, the government claimed in its answer to be processing the request at that time with no mention of a waiver. And so we would argue, Your Honors, that they have waived. We've lost your sound. Are you speaking? We can't hear. I'm not sure whether you can hear us, but we've lost your sound. This might be a good time for you all to close your eyes and meditate. Can you hear me? Yes. Yes. Yes. We can hear you now. All right. Don't breathe. Don't move. Pardon? I didn't hear that. Don't breathe. Don't breathe. Don't move. Just talk. Okay. Your Honors, may it please the Court, Mary Ann Dugan for the appellee. First of all, the exemption was never mentioned in the answer filed by the government until they filed their summary judgment motion. And in fact, in their answer to the complaint, the government claimed to be processing the request and at no time up to the summary judgment motion did the government claim any sort of exemption. And the summary judgment motion was a year and a half after the Freedom of Information Act request. But the government did raise it in the summary judgment motion, so you were put on notice that this was a position being taken, correct? Yes, Your Honor. My point is that I believe there should be a waiver deemed by their failure to put it in their answer. I was not able to find any case law for or against that argument, but I did submit that as a preliminary threshold argument. Why don't you tell us why you need these documents? This is all in connection with divorce proceedings, right? There is a very complicated set of facts that I attempted to summarize in the declaration I filed with the lower court. First of all, the reason for a FOIA request is not relevant to whether the documents should be disclosed. I know that, but we have people listening to what's going on here in the gallery, and so it'd be nice to let them know what this fight is all about. I appreciate that, Your Honor. Mr. Caruso, he never did transfer ownership of the business to his wife, now ex-wife. He did give her management of the business, and as the court found, the district court found that ER 11, the court noted that his wife was helping him run the business. She was not a successor in interest. And then when he filed for divorce, she chose to hand the records over to the Bureau of Alcohol, Tobacco, and Firearms. The need for the records is, and she did that in violation of a restraining order that was in the tendency of the divorce, the reason for the need for the records is to review the potential for a claim against the ex-wife for abuse of a vulnerable person. The testimony of the plaintiff's ex-wife in the divorce is cited by the government in their Mr. Caruso was not a licensee at the time of the record being handed to the government, and that is not true. There's nothing in the record other than the wife's self-serving testimony that claims that that's true. And tellingly, the government did not submit the document that she was supposedly testifying about on those pages. Furthermore, the Freedom of Information Act request clearly requested documents regarding Mr. Caruso himself when he was a licensee, and his business as a licensee. And so the fact that his records as a firearms licensee were held by his wife at the time that they were transferred to the government does not change the fact that they were his records and were regarding his activities as a licensee. Apparently, counsel. The law cited by the government. Judge Fletcher has a question for you. Counsel, apparently the district court thought that the exemptions would apply, that would be three and five, but then they're granted access on a completely different basis. Are you in a position to defend that position taken by the district court? The district court, on reconsideration, withdrew part of its opinion. The part that is on appeal is the district court's correct finding that although Section 923G1 does prohibit the government from disclosing information required to be kept by licensees, the exception to that statute applies, which states that when the government takes documents from licensees, it must give those licensees copies of those records. And that is completely in line with the Supreme Court case that we cited, U.S. Department of Justice v. Julian, which interpreted the Freedom of Information Act in the context of a privilege. In that case, the court stated that the pre-sentence reports at issue in that case were not privileged with respect to the subjects of those reports themselves, that the people who were discussed in those pre-sentence reports have a right to those documents, even though there is a privilege normally that would keep those documents exempt from FOIA. Here, it's even more compelling to find that Mr. Caruso has a right to his own records that were created while he was the owner of the business. And they are friends of his. But what about the language of the statute that the records must be seized by the government? Thank you, Your Honor. There is no evidence in the statute itself that that term has any particular meaning. There's no definition given of that word, and there's no indication that that means that it applies only to an involuntary transfer of records. To hold that the records must be seized creates a very strange result, which is that if somebody is so recalcitrant and or so problematic that the government has to seize their records, that person still has the right to get copies of those records. But if the licensee voluntarily allows his wife to help run the business, and she voluntarily hands the records to the government, the licensee has no right to get copies of his records. And that is simply a nonsensical result. Clearly, the intention of the ---- Well, why is that nonsensical? Well, in one instance, the government seizes the records, goes in and grabs them. And the other example is that the party who now runs the business or owns the business turns over records voluntarily to the government. You'd assume that they'd keep copies of records they turn over voluntarily, but, I mean, here you're telling us that you need these records because the acts and omissions of Mrs. Caruso, when she was helping to run the company, she did certain things that were wrong. And then we're talking about him being a vulnerable person, whatever that means, due to disability under Oregon law. So somehow she took, was taken advantage of him. And so we're embroiled, and the ATF is embroiled in the middle of a divorce proceedings. Now, what this is all about ---- Your Honor, that is why I kept that declaration very short, because I do not believe that the purpose, frankly, would be relevant. But if we go back to ---- First of all, our first argument is you do not have any ---- I don't know why you say the purpose. You think the purpose is not relevant. But I know personally I like to have the full picture, what's going on. What I understand is that they got into a divorce proceeding, and before that even happened, he turned the business over to his wife. He turned over records. He'd been helping run the business for a while, and something about the records weren't complete. And so she just turned over whatever records he gave her to the ATF. And you need it now, you need them now to show that she was doing some things that were improper, and that he was being taken advantage of. Well, Your Honor, a couple things ---- You don't think any of that's relevant, huh? Well, I agree with you that it is always good to have the full story and find out what is the story of the ---- Well, otherwise we're moving around in the dark. I agree with you, Your Honor. And to be more clear, there were significant assets in the business. There's some question about where some of those assets went. It's fairly complicated, and I didn't want to burden the Court with the length of your story. And the vulnerable person statute talks about people with disabilities. As a basic matter, we have two alternative arguments. One is related to that exception, which I just discussed. But more basically, we are arguing, Your Honor, that you do not need to look to the exceptions to Section 923G1. Because that statute simply prohibits the use of federal funds to disclose information required to be kept by licensees. And clearly, the purpose of that Act is to protect the rights of the licensees themselves from disclosure of their own records to the public or to government bodies, in the case of the City of Chicago case. Here, it is the licensee himself who created these records and would now like to have them back. And the fact that they were not seized because his manager was compliant should not prohibit him from getting copies of his own records under the clear language of the U.S. Department of Justice v. Julian case, which says there is no purpose to be served in allowing this exception to FOIA to apply to people's own records. Now, remembering that FOIA exemptions must be interpreted very narrowly, and the government has the burden of proving that there is an exception to Freedom of Information Act that applies. That means that every single step of the way here, the burden should be on the government to prove that Mr. Caruso is not entitled to a copy of his own records. You want to save time for a rebuttal? She doesn't have rebuttal time. Oh, excuse me. That's okay. That's okay. I'm used to being the appellant myself, so I almost did ask for time for a rebuttal. Your Honors, I think that this can be looked at as somewhat complex if you get into the weeds on why does Mr. Caruso need these records, what happened with his wife. That's not what this is about. This is about whether the government can withhold, under the Freedom of Information Act, a person's own records that they created, and that however they got out of that person's hands and to the government, why is the government not required to give a copy of those documents back? And here we have not only the U.S. Department of Justice v. Julian case, we also have the exception to the statute that the government is relying on, which says even if the government comes in and forcibly seizes records, they must give copies back to the licensee. And just to clarify one thing in the reply brief of the government, they incorrectly say that that statute requires only that the government provide the licensee with access to review records they quote, already have. It does not. It says that the government must provide copies. Even when the licensee no longer has a copy, the government must give them a copy. And so either U.S. Department of Justice v. Julian or that exception to that statute apply to Mr. Caruso. Thank you. So if, for example, if a party is in the gun business and they have a wheelbarrow full of records and they decide that they don't need them anymore and they just turn them over voluntarily to the government, to the ATF, and the ATF accepts them, and then later on if they want, and the people didn't keep copies of those records, and if the ATF, and if the person wants copies, then the ATF has to go ahead and make them copies of all those records? Well, yes, I think so. And I think if you analogize it to the IRS, Your Honor, I've had plenty of clients who say, oh, I don't have my tax return. And they say, go to the IRS and get a copy. Nobody else can get a copy of that tax return without a release or without some special rule applying. But the person who created that document, the IRS return, certainly has a right to a copy of their own tax return,  Well, here you have a person who gave up whatever records he had to his estranged wife, and then she decided she didn't want them. She didn't make a copy, apparently, and then turned them over to the ATF. People usually keep copies of their tax returns. Well, if we make, that would require micromanaging by the courts of these FOIA disputes if we don't make a bright line rule. The bright line rule should be that if a person creates a document here, specific to these statutes, but creates a document and the government ends up with a copy of it, that person should be entitled to get a copy back. And just to clarify, Mr. Caruso did not turn it over to his estranged wife. His then-wife was helping him run the business, as the district court explicitly found. And then when he filed for divorce, then she chose to hand those documents over to the government. Just a factual clarification. All right. Thank you, Your Honor. All right. Thank you. As Your Honor suggests, any sense of strangeness that a person might not be able to access what was once his own record is mitigated in this case by the simple fact that plaintiff could have made copies at any point before they were transferred to the government's possession. But even were that not the case, the question isn't, is this a strange result? It's, what do the statutes at issue require? And it's clear that through the enactment of these recurring appropriations riders, that Congress has expressly prohibited the disclosure of precisely the types of records at issue. There's no dispute that as a general matter, these records do fall within the category that's prohibited. So the question is, if the government acted promptly and notified that they didn't have to produce the records, maybe an explanation early on would have avoided all of this. The government didn't do anything to respond at all, which seems to me to at least put some blame on the government. Well, at the time that the records were transferred, Your Honor, it was entirely at the initiative of Ms. Caruso. So there was, I think at that point, it was in no way incumbent on the government to provide any explanation. She said, please take these records. Don't they have to deny a request promptly? They're given a certain number of days to do that? Your Honor, yes. Several years after the transfer, when the FOIA request was instigated, sorry, when the request was made, ATF should have responded more quickly. It ends up being true more often than it should, that these requests take a while to process. And that is unfortunate. But it doesn't change what the outcome should be here as a legal matter. As soon as ATF did process the request, it identified the prohibition on which we now rely in the appropriations riders, and it properly asserted Exemption 3 as the basis for withholding. I think a more timely response by ATF wouldn't have changed anything at all in terms of, you know, when copies could have been made by the plaintiff or his wife. Here, they had long since been transferred to the government's possession. So when did the government first take the position of the statute that the government was relying on? Counsel indicated it was in the summary judgment motion. Do you agree? It was before that. So the government filed its response before it had finished processing the request. And about three months after the answer was filed, the government issued a notice to plaintiff identifying the basis for the withholding. And in that letter, identified Exemption 3 and the appropriations rider on which we now rely. In terms of the first court filing, it was the government's motion for summary judgment, and also its response to plaintiff's motion for summary judgment. But the essential point is that the government has consistently asserted Exemption 3 as the basis for withholding here. One final point. Plaintiff seems to suggest now on appeal that there may be some factual disputes that the record sites on which the government relies, which are, in fact, plaintiff's own evidence, may not be accurate with respect to when plaintiff was a licensee and how that may bear on the questions. Our position is that it doesn't. There's simply no evidence of a seizure. 923g1d doesn't apply. But were the court to conclude that these questions were relevant and there is a factual dispute, the proper course would, of course, be to remand for further proceedings rather than affirming the grant of summary judgment for plaintiff here. Thank you. Kennedy. Okay. Thanks. The matter is submitted. We'll take up the next matter.
judges: Marshall, Fletcher, Pregerson